FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRIST OF FLORIDA
ORLANDO DIVISION

2015 JUL -2 PM 1: 06

~~STRICT COURT~~
~~DISTRICT OF FL~~
~~DO, FLORIDA~~

DAVID SWANSON,
**Plaintiff,**

v.                                                                Case No._____

BAYVIEW LOAN SERVICING, LLC,                6:15-CV-1078-OR-28DAB
**Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff DAVID SWANSON ("Plaintiff"), by and through the undersigned attorney, and hereby sues Defendant BAYVIEW LOAN SERVICING, LLC ("Defendant" or "Bayview"), and alleges as follows:

PARTIES, JURISDICTION, and VENUE

1.      Plaintiff David Swanson owns real property located at and commonly known as 2733 Mayer St., Orlando, Florida 32806 (the "Property") and is a resident of Orange County, Florida in the Middle District of Florida.

2.      Defendant Bayview Loan Servicing, LLC is the current servicer of a loan represented by a note and mortgage on the Property, is a Delaware limited liability company, and is authorized to transact business in Florida.

3.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

4.      This action is specifically filed to enforce regulations promulgated

by the Consumer Finance Protection Bureau that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.41 of Regulation X.

5.      This Court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code.

6.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintained the Property as Plaintiff's primary residence.

## INTRODUCTION

7.      On or about April 2, 2007, Plaintiff signed a fixed rate promissory note payable to the order of CTX Mortgage Company, LLC ("Note"), secured by a mortgage on the Property executed by Plaintiff and his then wife, Sandrine Timm De Oliviera in favor of Mortgage Electronic Registration Systems, Inc. as nominee for CTX Mortgage Company, LLC ("Mortgage"). The Note and Mortgage are sometimes herein referred to as the "Loan."

8.      Pursuant to an assignment of mortgage dated May 31, 2012, the Mortgage was assigned to JPMorgan Chase Bank, National Association ("Chase") and Chase or one of its predecessor or subsidiary corporations began servicing Plaintiff's loan after its origination in 2007.

9.      Plaintiff began making payments on the loan and remained current on the loan until Plaintiff loss his job and experienced financial difficulties. Plaintiff contracted Chase and requested assistance in order to restructure the Loan. In response (after multiple attempts to speak with Chase representatives), Chase directed in March 2009 that Plaintiff could skip payment on the loan due through July 1, 2009. Plaintiff also

2

understood the forbearance agreement with Chase to include adding the missed payments to the then outstanding balance of the Loan pursuant to a loan modification.

10.     Therefore, Plaintiff did not make payments through July 1, 2009. However, in subsequent conversations with Chase, Plaintiff was told – contrary to the agreement the parties had reached – that the missed payments would have to be paid in full before any loan modification would be agreed to by Chase.

11.     In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act ("RESPA") regulation (Regulation X), which became effective on January 10, 2014.

13.     The residential mortgage loan (the "Loan") in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

14.     Defendant is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers" as defined in 12 C.F.R. § 1026.41(e)(4).

15.     Plaintiff is asserting a claim for relief against Defendant for breach of the specific rules under Regulation X as well as state law claims as set forth below.

16.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorney fees.

17.     As described herein, Defendant employed business practices resulting in

intentional harassment and abuse of the Plaintiff and engaged in patterns of outrageous, abusive, and harassing conduct by and through its agents and representatives with respect to the servicing of the subject loan described herein below.

18.     Defendant consents to, and has knowledge and control of, the servicing, collecting, and foreclosure activities of its agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors for the subject loan described herein below.

## BACKGROUND

19.     On August 30, 2012, Chase, the purported then-holder of the Note at issue, filed a complaint for foreclosure on the Loan against Plaintiff in the Circuit Court in and for Orange County, Florida Case No. 2012-CA-014599 (the "Foreclosure Case").

20.     In March 2013, after Chase filed the Foreclosure Case, Chase sent correspondence to Plaintiff that Plaintiff could be considered for options to modify the Loan and "avoid foreclosure."

21.     Plaintiff was instructed to submit any loss mitigation application materials regarding the Loan to Chase, which Plaintiff did throughout 2013.

22.     By letter dated February 14, 2014, Chase informed Plaintiff that the servicing of the Loan was being transferred to Bayview effect March 4, 2014.

23.     By letter dated February 20, 2014, Plaintiff was notified by Bayview that the owner of the Loan was now U.S. Bank National Association, as trustee, in trust for the benefit of the Holders of Bayview Opportunity Master Fund IIIb REMIC Trust

2014-12NPL1 Beneficial Interest Certificates, Series 2014-12NPL1.

24.    The Mortgage that compromises a part of the Loan was assigned by an Assignment of Mortgage executed on May 31, 2012, by CTX Mortgage Company, LLC to Chase.

25.    By letter dated February 14, 2014, Chase notified Plaintiff that Defendant would become the servicer of the Loan as of March 4, 2014.

26.    The Mortgage was later assigned, this time by an Assignment of Mortgage dated May 8, 2014, and recorded in the Public Records of Orange County, Florida on May 22, 2014, purporting to assign the Mortgage from Chase in favor of the Secretary of the Department of Housing and Urban Development.

27.    The Mortgage has also been assigned by an Assignment of Mortgage executed on April 4, 2014, by the Secretary of the Department of Housing and Urban Development to Bayview. This assignment predates the assignment described in paragraph 25 above. However, the April 4, 2014, assignment was not recorded in the Public Records of Orange County, Florida until September 4, 2014.

28.    Despite becoming the servicer of the Loan on March 4, 2014, Bayview was not substituted as the plaintiff in the Foreclosure Case until the court issued an order dated July 14, 2014.

29.    Plaintiff renewed his attempts to obtain a loss mitigation option regarding the Property from Bayview following receipt of notice in February 2014 that Bayview was the servicer of the Loan. However, for several months, Bayview's system would not

permit Plaintiff to submit required paperwork.

30. Finally, Plaintiff was able submit a complete loss mitigation application to Bayview's then counsel (Butler and Hosch, Orlando, Florida) via email on May 27, 2014. ("Application"), when Plaintiff's counsel emailed the Application to Defendant's counsel. Defendant's counsel confirmed the receipt of the Application by email to Plaintiff's counsel dated May 28, 2014. The Application was submitted under 12 C.F.R. part 1024 Supplement 1, Comment 41(b)(1)-3.

31. Despite multiple requests, Plaintiff was never informed that the Application was incomplete, until that claim was made by Defendant's then counsel during Plaintiff's attempts to obtain discovery responses from Defendant in the Foreclosure Case. In fact, on June 19, 2014, Defendant's then counsel told Plaintiff's counsel that Defendant would not provide Plaintiff or his counsel with the list of additional documents purportedly being requested to facilitate the review of the Application unless Plaintiff agreed to withdraw his motion in the Foreclosure Case to compel discovery and for sanctions for Defendant's violation of court orders.

32. Defendant then, by letter dated July 10, 2014, informed Plaintiff that it was denying the request for a HAMP loan modification for the specific reason of the failure to "provide [Bayview] with the documents requested," despite that fact the documents were never requested by Bayview or Defendant's counsel.

33. On July 10, 2014, Plaintiff's counsel responded to the July 10, 2014, letter from Defendant by an email to Defendant's counsel demanding that Defendant immediately send Plaintiff's counsel any correspondence wherein Defendant directed or

requested the submission of additional documents to complete the Application.

Plaintiff's counsel reminded Defendant's counsel that, pursuant to the Bureau of

Consumer Financial Protection - 12 CFR Chapter X Part 1024.41, subsection (b),

following receipt of a loss mitigation application, the servicer, Bayview, was required to

"exercise reasonable diligence in obtaining documents and information to complete a

loss mitigation application." Further, following receipt of loss mitigation application and

if received 45 days or more before a foreclosure sale (which was the situation in the

Foreclosure Case), the servicer "shall" do the following:

> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

No response to this demand was received by Plaintiff or his counsel.

34.     Defendant's refusal to comply with discovery requests from Plaintiff in

the Foreclosure Case led to Defendant being sanctioned in the Foreclosure Case.

35.     Finally, Plaintiff was informed that his Application was complete when

Defendant confirmed that fact by letter to Plaintiff dated October 10, 2014.

36.     However, by the time Bayview confirmed the receipt of a complete loss mitigation application on October 10, 2014, Bayview had already taking the Foreclosure Case to trial and had received a judgment in its favor on August 7, 2015 ("Foreclosure Judgment").

37.     The original sale date for the Property pursuant to the Foreclosure Judgment was set for October 9, 2014. However, by motion dated September 22, 2014, Defendant moved the court in the Foreclosure Case to cancel the October 9, 2014, sale date because "[Bayview] is presently reviewing [Plaintiff's] eligibility for loss mitigation options. [Bayview] wishes to exhaust all possible loss mitigation prior to proceeding to foreclosure sale. The borrower is currently being reviewed for a loan modification under HAMP." The court reset the sale for December 2, 2014.

38.     On December 2, 2014, Defendant, having received and confirmed receipt of the complete Application – but yet to give any response to Plaintiff's Application – again filed a motion to cancel the foreclosure sale **set for that day**. In its motion to cancel the December 2, 2014, sale, Defendant, again, informed the court that Bayview was considering loss mitigation options, stating in its motion "The Foreclosure sale needs to be cancelled as this is in a loan modification workout." The court in the Foreclosure Case refused to grant the motion and the foreclosure sale of the Property occurred on December 2, 2014. Defendant was the high bidder at the sale of the Property.

39.     Following the sale, Plaintiff filed a motion to vacate the sale and

objections to the sale.

40.     Despite Plaintiff complying with all requests for information from Bayview and the prior servicer (Chase), Plaintiff has still not yet provided with any response to the Application.

41.     To date, the Foreclosure Case has not been dismissed.

42.     Plaintiff originally vacated the Property for fear of being met with a writ of possession. However, the Orange County Clerk of Court refused to issue the certificate of title to Bayview following Plaintiff filing his objection to the sale of the Property to Defendant.

43.     On January 22, 2015, the court in the Foreclosure Case vacated the sale of the Property to Defendant and ordered Defendant to pay Plaintiff's attorney fees in the amount of $3,000.00 as a sanction.

44.     Thereafter, Plaintiff went back to the Property on February 9, 2015, and found that, despite the Orange County Clerk of Court having never issued a certificate of title to the Property and the court in the Foreclosure Case having vacated the sale (at the January 22, 2015, hearing attended by Defendant's counsel), Defendant had changed the locks at the Property.

45.     The Plaintiff retained the services of a locksmith and changed the locks at the Property back to his possession.

46.     On February 12, 2015, Defendant returned to the Property to find that Defendant had not only **changed the locks again** but was confronted by individuals

working for Defendant in the Property. Plaintiff called the Orlando Police Department and had the trespass warnings issued to the individuals trespassing on the Property.

47.     Plaintiff discovered that Defendant's agents, who had gained access to the Property after Plaintiff had hired the locksmith to rekey the locks, by breaking through the front door of the Property, had removed carpets, tile, fixtures, and otherwise damaged the Property to the extent of over $16,000.00.

48.     Defendant never gave any notice to Plaintiff that it intended to claim the Property was abandoned, claim it would take steps to "secure" the Property, or take steps to remodel the Property.

49.     Plaintiff, who at all times relevant hereto is and was the owner of the Property, never gave permission to Defendant to change locks, damage, or remove any items from the Property.

50.     As a direct and proximate result of Defendant's acts or omissions, as set forth herein, Plaintiff suffered compensatory, statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life, together with court costs and attorney fees.

51.     Plaintiff's statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life (which are caused by Defendant's intentional acts as referred in § 559.77, Fla. Stat.), have continued and are continuing as of the filing of this complaint, together with court costs and attorney fees.

52.    All conditions precedent to the filing of this action have occurred.

**COUNT ONE: VIOLATION OF 12 C.F.R. 1024.41(b)**

53.    Plaintiff restates and incorporates herein all of his allegations contained in the preceding paragraphs 1 through 52 in their entirety, as if fully set forth herein.

54.    12 C.F.R. 1024.41(b) defines a complete loss mitigation application as an application wherein servicer has received all the information that the servicer requires to evaluate applications for the loss mitigation options available to a borrower.

55.    12 C.F.R. 1024.41(b) further states that a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

56.    12 C.F.R. 1024.41(b)(2) provides that if a servicer receives a loss mitigation application 45 days or more before a foreclosure sale that the must promptly review the application to determine whether the application is complete and notify the borrower within five days whether the application is complete.

57.    On or about May 27, 2014, Plaintiff submitted the Application via email to Defendant by and through Defendant's then counsel, Butler and Hosch.

58.    The Application was submitted under 12 C.F.R. part 1024 Supplement 1, Comment 41(b)(1)-3.

59.    Despite the claims in Defendant's July 10, 2014, letter, Defendant never provided Plaintiff with specific deficiencies in the Application such that it would be incomplete. Rather, Defendant confirmed the Application is complete (in Defendant's

October 10, 2014, letter) and as represented to the court in the Foreclosure Case in both of Defendant's motions to cancel the foreclosure sale of the Property.

60.     Defendant failed to exercise reasonable diligence in dealing with the Application and failed to promptly review the Application to determine whether it was complete and notify Plaintiff within five days of receipt of the Application whether the Application was complete or incomplete.

61.     Plaintiff alleges that Defendant's conduct in this case constitutes a willful violation of the applicable provisions of Regulation X.

62.     As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorney fees.

WHEREFORE, Plaintiff prays that this Court enter its order granting judgment for the following:

A.) To enter an injunction until Plaintiff is allowed to pursue all loss mitigation rights;

B.) For actual damages, costs and reasonable attorney fees;

C.) For statutory damages of no less than $2,000.00; and

D.) Such other relief to which this Court may deem appropriate.

### COUNT TWO: VIOLATION OF 12 C.F.R. 1024.41(c)

63.     Plaintiff restates and incorporates herein all of his allegations contained in the preceding paragraphs 1 through 52 in their entirety, as if fully set forth herein.

64.     12 C.F.R. 1024.41(c) provides that upon a servicer's receipt of a loss mitigation application more than 37 days before a foreclosure sale, then, *within thirty*

12

*(30) days*, a servicer must evaluate the borrower for all loss mitigation options available and provide written notice to the borrower stating which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage.

65.     On or about May 27, 2014, Plaintiff submitted the Application via email to Defendant by and through Defendant's then counsel, Butler and Hosch.

66.     The Application was submitted more than 37 days prior to any the scheduled sale of the Property.

67.     The Application was submitted under 12 C.S.R. part 1024 Supplement 1, Comment 41(b)(1)-3.

68.     Despite the claims in Defendant's July 10, 2014, letter, Defendant never provided Plaintiff with specific deficiencies in the Application such that it would be incomplete. Rather, Defendant confirmed the Application is complete (in Defendant's October 10, 2014, letter) and as represented to the court in the Foreclosure Case in both of Defendant's motions to cancel the foreclosure sale of the Property.

69.     Defendant wholly failed to evaluate Plaintiff for all loss mitigation options available and provide written notice to the borrower stating which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the Mortgage within 30 days of receipt of the Application.

70.     Plaintiff alleges that Defendant's conduct in this case constitutes a willful violation of the applicable provisions of Regulation X.

71.     As a result of this Defendant's actions, Defendant is liable to Plaintiff for

actual damages, statutory damages, costs, and attorney fees.

WHEREFORE, Plaintiff prays that this Court enter its order granting judgment for the following:

    A.)   To enter an injunction until Plaintiff is allowed to pursue all loss mitigation rights;

    B.)   For actual damages, costs and reasonable attorney fees;

    C.)   For statutory damages of no less than $2,000.00; and

    D.)   Such other relief to which this Court may deem appropriate.

## COUNT THREE: VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

72.    Plaintiff restates and incorporates herein all of his allegations contained in the preceding paragraphs 1 through 52 in their entirety, as if fully set forth herein.

73.    At all times relevant to this action, Defendant is subject to and must abide by the law of Florida, including § 559.72, Fla. Stat.

74.    Defendant engaged in an act or omission prohibited under § 559.72(9), Fla. Stat., by asserting "the existence of some other legal right when such person knows that the right does not exist," i.e., asserting the right to take possession of the Property, change the locks on the Property, and willfully damage the Property.

75.    Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuing sustaining of damages as described by § 559.77, Fla. Stat., including, but not limited to: statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life; and attorney fees, interest, and costs.

WHEREFORE, Plaintiff prays that this Court enter its order granting judgment for the following:

      A.)   To enter an injunction prohibiting Defendant from similar conduct in the future;

      B.)   For actual damages, costs and reasonable attorney fees;

      C.)   For punitive damages;

      D.)   For statutory damages of no less than $1,000.00; and

      E.)  Such other relief to which this Court may deem appropriate.

## COUNT FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

76.    Plaintiff restates and incorporates herein all of his allegations contained in the preceding paragraphs 1 through 52 in their entirety, as if fully set forth herein.

77.    The outrageous conduct of Defendant individually, and through its employees, agents, and representatives, as described herein, deliberately, recklessly and/or intentionally inflicted emotional distress on Plaintiff.

78.    The outrageous conduct of Defendant, as described herein, was directed at Plaintiff by and through Defendant's employees, agents, apparent agents, or other persons acting to benefit and further the interests of Defendant, and acting in the course and scope of their employment or agency with Defendant.

79.    As a direct and proximate result of the outrageous conduct of Defendant, as described herein, Plaintiff sustained mental pain and suffering, emotional distress, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff prays that this Court enter its order granting judgment for the following:

A.) To enter an injunction prohibiting Defendant from similar conduct in the future;

B.) For actual damages, costs and reasonable attorney fees;

C.) For punitive damages; and

D.) Such other relief to which this Court may deem appropriate.

### Jury Demand

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 16, 2015.

Respectfully,

Mark R. Lippman, Esq.
Florida Bar No.: 244030
Lippman Law Offices, P.A.
Baldwin Park Center
4767 New Broad Street
Orlando, FL 32814
407-648-4213 (Phone)
407-839-3948 (Fax)
Attorney for Plaintiff
Email: filings@llopa.com and
mlippman@llopa.com