UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID SWANSON,

        Plaintiff,

v.                               Case No:  6:15-cv-1078-Orl-28DAB

BAYVIEW LOAN SERVICING, LLC,

        Defendant.

---

## ORDER

David Swanson brings this action against Bayview Loan Servicing, LLC, alleging two claims for violations of regulations promulgated under the Real Estate Settlement Procedures Act[1] ("RESPA") and two claims under Florida law. (Compl., Doc. 1). Bayview moves to dismiss all four claims for failure to state a claim for which relief can be granted. (Doc. 9). As set forth below, Bayview's motion is granted in part and denied in part.

### I.  Background

In April 2007, Swanson signed a promissory note secured by a mortgage on property in Orlando, Florida ("the Property"). (Compl. ¶¶ 1, 7). In August 2012, non-party JPMorgan Chase Bank ("Chase"), "the purported then-holder of the Note," filed a complaint for foreclosure against Swanson in the Circuit Court in and for Orange County, Florida, Case No. 2012-CA-014599. (Id. ¶ 19). Chase informed Swanson in February 2014 that the servicing of the loan was being transferred to Bayview effective March 4, 2014. (Id. ¶¶ 22 & 25).

---

[1] 12 U.S.C. § 2601 et seq.

After being notified that Bayview was the servicer of the loan, Swanson attempted to obtain loss mitigation regarding the Property from Bayview.  (Id. ¶ 29).  Swanson allegedly submitted a complete loss mitigation application to Bayview's then-counsel via email on May 27, 2014, and counsel confirmed receipt of that application the next day. (Id. ¶ 30).  In a letter dated July 10, 2014, Bayview informed Swanson that it was denying the request for a loan modification because documents had not been provided with "documents requested," though neither Bayview nor its counsel had ever requested documents.  (Id. ¶ 32).  Swanson's counsel responded to the July 10 letter in an email that same day, demanding that Bayview immediately supply Swanson with correspondence in which Bayview had requested additional documents for completion of the loan modification application.  (Id. ¶ 33).  Bayview did not respond to that demand.  (Id.).

Eventually, on October 10, 2014, Bayview confirmed in a letter that Swanson's loan modification application was complete.  (Id. ¶ 35).  Swanson "has still not yet [been] provided with any response to" his loan modification application.  (Id. ¶ 40).  Meanwhile, the state court entered a foreclosure judgment in Bayview's favor on August 7, 2014.[2]  (Id. ¶ 36).  A foreclosure sale was initially scheduled for October 9, 2014, but was later reset for December 2, 2014.  (Id. ¶ 37).  The Property was sold on December 2, 2014, and Bayview was the high bidder.  (Id. ¶ 38).  Swanson moved to vacate the sale, and on January 22, 2015, the state court vacated the sale.  (Id. ¶¶ 39, 43).

Swanson went to the Property on February 9, 2015, and found that Bayview had changed the locks on the Property, even though no certificate of title to the Property had

---

[2] The Complaint lists the date of the foreclosure judgment as August 7, 2015, (see Doc. 1 ¶ 36), but the judgment itself reflects that it was filed in open court on August 7, 2014, (see Final Judgment for Foreclosure, Doc. 9-2).

been issued and the sale had been vacated. (Id. ¶ 44). Swanson hired a locksmith to change the locks at the Property back, but on February 12, 2015, Swanson went to the Property, discovered that Bayview had changed the locks again, and "was confronted by individuals working for [Bayview] in the Property." (Id. ¶¶ 45–46). Swanson further discovered that Bayview's agents had removed items from the Property and otherwise damaged it in an amount in excess of $16,000. (Id. ¶ 47).

Swanson filed this action on July 2, 2015. In Counts I and II, Swanson alleges violations of RESPA regulations; in Count III he alleges a violation of the Florida Consumer Collection Practices Act; and in Count IV he brings a claim under Florida law for intentional infliction of emotional distress. Bayview now seeks dismissal of all four claims for failure to state a claim for which relief can be granted.[3]

## II. Motion-to-Dismiss Standards

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[3] Bayview originally filed its motion to dismiss on September 28, 2015. When Swanson failed to respond to the motion within the time allowed for doing so, the Court granted the motion to dismiss, dismissed the Complaint without prejudice, and directed the Clerk to close the case. (Order, Doc. 10). Swanson moved to reopen the case, (Doc. 11), and when Bayview did not respond to that motion the Court granted it, reopened the case, reinstated Bayview's motion to dismiss, and set a deadline for Swanson to respond to the motion to dismiss, (Order, Doc. 12). Swanson filed his Response (Doc. 14) within that deadline, and the motion to dismiss (Doc. 9) is ripe for ruling.

face.'" Id. (quoting Twombly, 550 U.S. at 570).  In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

III.   **Discussion**

   A.   **Counts I and II—RESPA**

   Swanson alleges in Counts I and II that Bayview violated two subsections of a RESPA regulation—12 C.F.R. § 1024.41(b) and (c)—that pertain to a servicer's obligations with regard to loss mitigation applications submitted by borrowers.  Subsection 1024.41(b) provides in pertinent part:

> If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
>
> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
>
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete.  If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date [by which the borrower should submit the documents and information necessary to make the loss mitigation application complete]. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

12 C.F.R. § 1024.41(b).  Swanson contends in Count I that he submitted a loss mitigation application to Bayview's counsel via email on or about May 27, 2014, and that Bayview did not advise him that the application was incomplete.  (Compl. ¶¶ 57, 59).  Swanson further

4

contends that Bayview "failed to exercise reasonable diligence in dealing with the [a]pplication and failed to promptly review the [a]pplication to determine whether it was complete and notify [Swanson] within five days of receipt of the [a]pplication whether the [a]pplication was complete or incomplete."  (Id. ¶ 60).

Subsection 1024.41(c) provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:  (i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower."  Swanson alleges in Count II that he submitted a loss mitigation application via email to Bayview's counsel on May 27, 2014—more than 37 days prior to any scheduled sale of the Property—and that Bayview never advised him that the application was incomplete.   (Compl. ¶¶ 65–66, 68).   Bayview instead acknowledged that the application was complete but "wholly failed to evaluate [Swanson] for all loss mitigation options available and provide written notice" of which options, if any, it would offer within thirty days of receipt of the application.  (Id. ¶¶ 68-69).

In its motion to dismiss, Bayview argues that Counts I and II fail to state claims because Swanson alleges that he submitted his loss application to Bayview's counsel rather than to Bayview.  Bayview contends that Swanson is required to allege in the Complaint the date and time that Bayview—rather than Bayview's counsel—received the loss mitigation application.  Bayview cites no authority for this proposition.  Swanson responds that Bayview's counsel was Bayview's agent and that the Complaint's allegations are sufficient.

Neither party has cited any case law specific to the issue at hand.  The Court finds Counts I and II sufficiently pleaded.  The regulation imposes requirements on a servicer who "receives" a loss mitigation application.  Swanson adequately alleges that Bayview received his application.   The Complaint alleges that Bayview erroneously denied Swanson's application on July 10, 2014, and that Bayview affirmatively acknowledged receiving the application.  (Compl. ¶¶ 32, 59).  Bayview's motion to dismiss Counts I and II therefore will be denied.

### B.    Count III—FCCPA

In Count III, Swanson alleges that Bayview violated section 559.72(9), Florida Statutes, which provides:  "In collecting consumer debts, no person shall: . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."  Specifically, Swanson alleges that Bayview asserted "the existence of some other legal right when such person knows that the right does not exist" when Bayview asserted "the right to take possession of the Property, change the locks on the Property, and willfully damage the Property."  (Compl. ¶ 74).

Bayview argues in its motion that its actions were based on "an absolute legitimate debt" and that it was entitled to secure the premises when Swanson "abandoned" it.  (Doc. 9 at 5, 6).  Swanson responds that he is challenging not the legitimacy of the debt but the legitimacy of Bayview's actions with regard to changing the locks and damaging the Property.  Additionally, Swanson denies that he abandoned the Property.  The Court finds that the issues raised regarding Count III—which present factual questions—cannot be resolved at this stage of the case.  This count is sufficiently pleaded to survive Bayview's Rule 12(b)(6) motion to dismiss.

### C.    Count IV—Intentional Infliction of Emotional Distress

In Count IV, Swanson brings a claim of intentional infliction of emotional distress.  In his Response (Doc. 30) to this Court's show cause Order (Doc. 29), Swanson requests that the Court either not dismiss this count at all or that it dismiss this count without prejudice to Swanson continuing to pursue this count in a pending state court action.  The Court will dismiss this count without prejudice.

## IV.    Conclusion

Accordingly, it is **ORDERED** as follows:

1.    Bayview's Motion to Dismiss (Doc. 9) is **GRANTED in part** and **DENIED in part**.  The motion is **granted** as to Count IV and is **denied** as to Counts I, II, and III.

2.    Count IV of the Complaint is **dismissed without prejudice** to Swanson continuing to pursue that cause of action in state court (Case No. 2015-CA-010739-O).

3.    Bayview shall file an answer to Counts I, II, and III of the Complaint **on or before August 5, 2016**.

4.    The Order to Show Cause (Doc. 29) is **discharged**.

**DONE** and **ORDERED** in Orlando, Florida, on July 19, 2016.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

7