UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID SWANSON,

    Plaintiff,

v.                                    Case No: 6:15-cv-1078-Orl-28DAB

BAYVIEW LOAN SERVICING, LLC,

    Defendant.

## ORDER

David Swanson filed this action against Bayview Loan Servicing, LLC, alleging two claims for violations of regulations promulgated under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. (RESPA) (Counts I and II), and two claims under Florida law (Counts III and IV). (Compl., Doc. 1). Bayview now moves for summary judgment on Swanson's two federal claims. (Mot., Doc. 50).[1] As set forth below, Bayview's motion is granted in part and denied in part.

I.    **Summary Judgment Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150

---

[1] The Court previously dismissed without prejudice Swanson's state law claim for intentional infliction of emotional distress (Count IV). (Order, Doc. 31). Bayview does not seek summary judgment on Count III, in which Swanson brings a claim for violation of the Florida Consumer Collection Practices Act.

(2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51 (1986)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## II. Factual Background[2]

In April 2007, Swanson signed a promissory note secured by a mortgage on property in Orlando, Florida. (Compl. ¶¶ 1 & 7). The mortgage was assigned to JPMorgan Chase Bank (Chase) in May 2012, (id. ¶ 8), and in August 2012 Chase filed a complaint for foreclosure against Swanson in the Circuit Court in and for Orange County, Florida. (Id. ¶ 19). In March 2014, Bayview began servicing the loan. (Id. ¶¶ 22 & 25). After being substituted as the plaintiff in the state court foreclosure action, Bayview obtained a final judgment for foreclosure on August 7, 2014.[3] (Id. ¶¶ 28 & 36; Final Judgment for

---

[2] The record in this case is sparse. Typically, in a summary judgment order the Court recites background facts from record evidence such as depositions and affidavits. Because such evidence is lacking here, the Court relies on the allegations of the Complaint to relay the background facts of this case.

[3] The Complaint lists the date of the foreclosure judgment as August 7, 2015, (see Doc. 1 ¶ 36), but the judgment itself reflects that it was filed in open court on August 7,

2

Foreclosure, Doc. 9-2). A foreclosure sale was initially scheduled for October 9, 2014, but was later reset for December 2, 2014. (Compl. ¶ 37). At the December 2, 2014 sale, Bayview was the high bidder. (Id. ¶ 38). The state court vacated the sale on January 22, 2015. (Id. ¶ 43).

Swanson filed this lawsuit on July 2, 2015. In Counts I and II of the Complaint, Swanson alleges that after Bayview became the servicer of the loan and before the foreclosure sale, he submitted a loss mitigation application to Bayview and that that submission triggered obligations by Bayview under two provisions of Regulation X of RESPA—12 C.F.R. ch. X, pt. 1024. Bayview now seeks summary judgment on both of these claims.

## III. Discussion

### A. Count I—12 C.F.R. § 1024.41(b)

In Count I of the Complaint, Swanson alleges that Bayview violated 12 C.F.R. § 1024.41(b), which provides in pertinent part:

> . . . If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
>
> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
>
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date [by which the borrower should submit the documents and information necessary to make the loss mitigation application

---

2014, (see Final Judgment for Foreclosure, Doc. 9-2).

3

complete]. . . .

12 C.F.R. § 1024.41(b)(2). Swanson alleges in the Complaint that he submitted a loss mitigation application on May 27, 2014, and that Bayview never informed him that the application was incomplete and instead informed him in an October 10, 2014 letter that the application was complete. (Compl. ¶¶ 57 & 59).

In moving for summary judgment on this count, Bayview argues that Swanson "ignores the content of . . . communications from Bayview which left no doubt regarding the status of his loan modification application." (Doc. 50 at 4). Bayview also argues that Swanson misstates what the October 10, 2014 letter said. The Court agrees with Bayview that the October 10, 2014 letter did not inform Swanson that the application was complete and that other correspondence informed him that it was incomplete. But the Court cannot determine from the record evidence whether Bayview *timely* complied with its obligations under 12 C.F.R. § 1024.41(b), and therefore Bayview's motion must be denied as to Count I.

In arguing that it satisfied the requirements of § 1024.41(b), Bayview relies on letters dated October 10 and 13, 2014, that it sent to Swanson. The October 10 letter stated: "This letter confirms our receipt of all or part of the documents requested in your Initial Package Request. Your loan and information are currently under review. You will be contacted soon about your eligibility. Additional documentation may still be required." (Ex. A to Jackson Aff., Doc. 51). Thus, as noted by Bayview, the Complaint's characterization of this letter as confirming that the application was complete, (see Compl. ¶ 59), is inaccurate. And in the October 13 letter, Bayview informed Swanson that it was "writing to let [him] know that [Bayview] still need[ed] at least one document from [him] in order to move the [workout] process forward." (Ex. B to Jackson Aff.). That letter noted that

4

Swanson needed to submit his 2013 tax return by November 12, 2014. (Id.).

Although these letters do acknowledge receipt of a loss mitigation application and inform Swanson that the application was incomplete, the Court cannot discern whether the letters were timely. Section 1024.41(b) requires a servicer to notify the borrower within five days of receipt of the application, and Bayview has not established when it received Swanson's application. Bayview does not state when it received it, though Bayview notes that Swanson claims to have submitted the application in May—more than four months before these letters were sent. Bayview's bare reliance on the sending of the letters in October is insufficient to satisfy its burden as the summary judgment movant on this claim.

In its summary judgment reply, Bayview asserts that Swanson cannot demonstrate the "concrete injury" required for Article III standing on this claim, citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), and Meeks v. Ocwen Loan Servicing LLC, No. 16-15536, 2017 WL 782285 (11th Cir. Mar. 1, 2017). (See Doc. 53 at 3–4). In Spokeo, the United States Supreme Court held, in the context of the Fair Credit Reporting Act, that "Article III standing requires a concrete injury even in the context of a statutory violation" and that the plaintiff could not "satisfy the demands of Article III by alleging a bare procedural violation" where "[a] violation of one of [the Act's] procedural requirements may result in no harm." 136 S. Ct. at 1549–50. And in Meeks, which involved an alleged violation of a different part of RESPA's Regulation X than that involved here, the Court relied on Spokeo in concluding that the plaintiff lacked Article III standing where he "suffered at most 'a bare procedural violation.'" 2017 WL 782285, at *2. There, the plaintiff alleged that the loan servicer did not acknowledge receipt of a request for information within five days as required by 12 C.F.R. § 1024.36(c), but it was undisputed that the plaintiff had actual

5

knowledge of receipt of the request. Id.

Spokeo and Robins do not entitle Bayview to summary judgment on Count I. Bayview may well have committed only a "bare procedural violation" of 12 C.F.R. § 1024.41(b) because to have Article III standing, Swanson must have suffered a concrete harm from a violation of § 1024.41(b)'s requirements. But on this record, the Court cannot determine whether Bayview committed a violation of § 1024.41(b) or whether Swanson suffered a concrete harm from any such violation. Bayview did not argue a lack of concrete injury in its motion, instead raising this suggestion only in its summary judgment reply. Because Bayview did not assert this as a basis for summary judgment in its motion, Swanson was not obligated to provide evidence of a concrete injury with his response. Thus, Bayview's motion must be denied as to Count I.

### B. Count II—12 C.F.R. § 1024.41(c)

Swanson alleges in Count II that Bayview violated 12 C.F.R. § 1024.41(c), which provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall: (i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower . . . ." Bayview argues that its obligations under this provision where never triggered because Swanson never submitted a "complete" loss mitigation application. The Court agrees.

Bayview notes that it notified Swanson in October that it had received his loss mitigation application and that further documentation—his 2013 income tax return—was required in order to move the process forward. (See Ex. B to Jackson Aff.). Bayview has

6

also presented evidence that after that letter was sent, Swanson requested a deed in lieu of foreclosure and Swanson's counsel informed Bayview that Swanson had not filed his 2013 taxes—in other words, that the 2013 tax return was not available. (See Nov. 10, 2014 Letter and Authorization, Exs. C & D to Jackson Aff.; Servicing Notes, Ex. E to Jackson Aff.).

In the face of evidence that Bayview informed him in October 2014 that his application was incomplete and what needed to be provided, Swanson has not responded with any evidence to show that his application ever became complete. Absent receipt of a "complete loss mitigation application"—defined in Regulation X as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower," 12 C.F.R. § 1024.41(b)(1)—a servicer's obligations under § 1024.41(c) are not triggered. See 12 C.F.R. § 1024.41(c)(1) (providing that "a servicer shall" do various things "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale"); see also Lage v. Ocwen Loan Servicing LLC, 839 F.3d 1003, 1009 (11th Cir. 2016) ("Although Regulation X requires a servicer to evaluate a loss mitigation application within 30 days, this duty is only triggered when the borrower submits a 'complete loss mitigation application more than 37 days before a foreclosure sale.'").

Swanson acknowledges in his summary judgment response that Bayview's obligations under § 1024.41(c) would only be triggered if it received a complete application. (See Doc. 52 at 5 ("Both parties hereto acknowledge that Defendant's obligation to review a loss mitigation application only arises once the servicer has a complete application.")). But he presents no evidence or argument suggesting that the application ever was

7

complete. His assertions that Bayview "treated it as complete" are insufficient and contradicted by the record. Bayview is thus entitled to summary judgment on Count II.

IV. **Conclusion**

In accordance with the foregoing, it is **ORDERED** as follows:

1. Bayview's Motion for Partial Summary Judgment (Doc. 50) is **GRANTED in part and DENIED in part.** The motion is **granted** on Count II and **denied** on Count I.

2. This case remains set for trial during the Court's September 2017 trial term. The parties shall notify the Court immediately if they settle the remaining claims in this case.

**DONE** and **ORDERED** in Orlando, Florida, on July 13th, 2017.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

8